1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GALO RECALDE,

                                    Plaintiff(s),

        v.

MARRIOTT OWNERSHIP RESORTS,
INC., et al.,

                                    Defendant(s).

Case No. 2:15-CV-1627 JCM (NJK)

ORDER

Presently before the court is defendant Marriott Ownership Resorts, Inc.'s motion to dismiss. (Doc. #5). The plaintiff, Galo Recalde, filed a response to the motion (doc. #11), and defendant subsequently replied. (Doc. #15).

I.      **Background**

Plaintiff, who is male, was employed by defendant as a sales executive starting on or about July 28, 2014, and he was terminated on or about March 10, 2015. (Doc. #1-1 at 6). Plaintiff had a female manager, Catherine Lovera, who oversaw two male assistant sales managers, Cesar Martos and Dean Landau. Plaintiff asserts that both managers had intimate sexual relations with Lovera. Martos was her ex-husband and Landau an "'on again, off again' sexual partner." (*Id.* at 7). Plaintiff asserts that Lovera referred to the men in her office as "her boys[.]" (*Id.*).

Plaintiff claims that Lovera engaged in blatant sexual harassment, which gradually led to a hostile work environment. (*Id.*). Lovera began the unwanted sexual conduct towards plaintiff with questions every morning such as: "Did you miss me" and "Were you thinking about me?" (*Id.* at 7). Plaintiff ignored the comments initially but eventually confronted Lovera and told her to stop; she refused to do so. (*Id.* at 9). Instead, Lovera made a habit of asking plaintiff additional

James C. Mahan
U.S. District Judge

1    questions at the end of each day such as: "Are you going to miss me tonight?" and stating that she

2    was "only a phone call away." (*Id.*).

3        Lovera then requested that plaintiff hug her, and when he refused "Lovera physically

4    grabbed [p]laintiff, wrap[ed] her arms around him, rubb[ed] her body against his, and kiss[ed] him.

5    [*sic.*]" (*Id.* at 8–9). Lovera also told plaintiff she had an altar in her home with a candle designated

6    particularly for plaintiff; she sent a picture of it to plaintiff, which is provided in the complaint.

7    (*Id.* at 10). Lovera told plaintiff how much she liked him and that she "loved him." (*Id.*). Lovera

8    frequently cursed at work and referred to female employees in a demeaning manner.

9        Plaintiff alleges that Lovera stated that she wanted plaintiff to "'be one of [her] favorite

10   boys[,]' and that a personal relationship with her would result in "favorable employment treatment

11   for plaintiff." (*Id.* at 8). However, "when Lovera was mad at [him] for rebuffing her advances she

12   would refuse to help plaintiff in closing customers and give him assignments that she knew

13   restricted his ability to earn a living." (*Id.* at 11). Plaintiff claims that Lovera, Martos, and Landau

14   met with him on December 28, 2014, and the meeting made it "obvious that unless plaintiff

15   succumb[ed] to all of Lovera's 'plans' for him, that his economic well-being would suffer. Lovera

16   told plaintiff to take some time off and 'think about things.'" (*Id.*).

17       Lovera told plaintiff "if you think I am so bad" … "take me to human resources [HR] and

18   tell them that I sexually harassed you." (*Id.* at 10). Plaintiff asserts that he became physically sick

19   and mentally distressed because of the hostile work environment. (*Id.* at 11–12). Plaintiff reported

20   Lovera to HR; he then took an authorized period of leave from work from January 27, 2015 to

21   March 9, 2015. (*Id.* at 24). On March 1, 2015, plaintiff requested an update on HR's investigation,

22   and HR responded that the investigation did not find anything and that if he did not return to work

23   by March 9, 2015, his employment would be terminated. (*Id.* at 25). Plaintiff did not return to work

24   and was terminated on March 12, 2015.

25   **II.    Legal Standard**

26       The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief

27   can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and

28   plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

**James C. Mahan**
**U.S. District Judge**

Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id.* at 678–79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III.   Discussion

Defendant seeks to dismiss plaintiff's third and fourth causes of action—negligent hiring, training, supervision, and retention of employee Catherine Loveras and intentional infliction of

emotional distress (IIED)—arguing that the claims are precluded by Nevada's worker's compensation statute, Nevada Industrial Insurance Act (NIIA). Defendant claims that it has immunity from tort liability under NIIA because the alleged injury "arose out of and during the course of employment[,]" and, thus, the tort claims are barred by NIIA. *See Wood v. Safeway*, 121 Nev. 724, 732, 121 P.3d 1026, 1032 (2005).

N.R.S. § 616A.020 provides that the "rights and remedies provided [under NIIA] for an employee on account of an injury by accident sustained arising out of and in the course of employment [. . .] shall be exclusive of all other rights and remedies of the employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury." Nev. Rev. Stat. § 616A.020(1). The court in *Wood* stated that "[i]njuries that fall within the ambit of the NIIA's coverage are those that both arise out of the employment and occur within the course of that employment." *Wood,* 121 Nev. at 733.

This court has recognized that "the NIIA covers 'injuries' resulting from 'accidents' at work, which may preempt negligence claims." *Painter v. Atwood,* 912 F. Supp. 2d 962, 966 (2012) (citing *Wood* at 1033–34). An "injury" under the statute means "a sudden and tangible happening of a traumatic nature, producing immediate or prompt result[,] which is established by medical evidence[.]" N.R.S. § 616A.265(1). "Accident" is defined as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." N.R.S. § 616A.030.

Here, the court must analyze the tort claims in counts three and four to determine if they would be precluded by the NIIA. In doing so, this court finds that count three—negligent hiring, training, supervision, and retention—is precluded under the NIIA. *See Wood v. Safeway, Inc.,* 121 Nev. 724 (2005); *Young v. Zappos.com, Inc.*, No. 2:08-cv-741-JCM-PAL, 2010 WL 1612140, at *4 (D. Nev. April 19, 2010) (relying on *Wood,* which "thoroughly analyzed the NIIA's preclusive effect on an employee's claims of negligent hiring, training supervision, sexual harassment, and negligent infliction of emotional distress"); *Painter*, 912 F. Supp. 2d 962, 966 (2012) (highlighting the importance that the NIIA preempts negligence claims). The court therefore dismisses count three.

James C. Mahan
U.S. District Judge

With respect to count four, the facts alleged do not support the necessary elements for a claim of intentional infliction of emotional distress against defendant Marriott. At most, plaintiff argues that Marriott was negligent in not supervising and not thwarting the alleged sexual harassment behavior. Based on this analysis, the claim against Marriott as alleged, and despite its label as intentional, is more appropriately negligent infliction of emotional distress, from which the employer would be immune due to the coverage under the NIIA. *See Wood,* 121 Nev. 724; *Conway v. Circus Circus Casinos, Inc.*, 116 Nev. 870, 974 (2000) (recognizing "that employers do not enjoy immunity, under the exclusive remedy provisions of the workers' compensation statutes, from liability for their intentional torts.... An employer who commits an intentional tort upon an employee cannot claim that the intentional act resulted in an accidental injury." (citation omitted).

The count four is alleged against both employer Marriott and the employee Lovera, but the court at this time dismisses only the claim against Marriott due to its immunity of negligent torts as an employer with coverage under the NIIA. Therefore, count four is dismissed against Marriott. *See Wood*, 121 Nev. 724; *Conway*, 116 Nev. at 974 (2000).

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, AJUDGED, AND DECREED that defendant's motion to dismiss (doc. #5) be, and the same hereby is, GRANTED consistent with the foregoing.

DATED April 11, 2016.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 5 -